IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SHERYLE L. BEAUDRY,

        Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

        Defendant.

Case No. 3:16-cv-02167-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Sheryle Beaudry brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff Disability Insurance

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this suit.

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the Court AFFIRMS the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 27, 2012, claiming disability beginning February 11, 2010. Tr. 157-58.[2] Her claim was denied initially on December 11, 2012, and upon reconsideration on April 23, 2013. Tr. 64-73, 74-83. A hearing was held October 2, 2014, before Administrative Law Judge ("ALJ") S. Andrew Grace. Tr. 14, 107-11, 122. Plaintiff testified at the hearing, represented by counsel; a vocational expert ("VE"), Patricia Ayerza, also testified. *Id.* After the hearing, the ALJ ordered a consultative physical examination report and medical source statement for plaintiff. Tr. 608-24. In light of the report and the VE's testimony, plaintiff's attorney requested either that plaintiff be found incapable of the full range of sedentary work and of sustained work activity, or that a supplemental hearing be held. Tr. 231-32. Consequently, a supplemental hearing was held on May 7, 2015. Tr. 35-63. Plaintiff testified, represented by counsel; VE Lynn Jones also testified. *Id.* On June 12, 2015, the ALJ issued a decision finding plaintiff not disabled under the Act and denying her benefits. Tr. 14-29. Plaintiff requested review before the Appeals Council, Tr. 9-10, which was denied September 20, 2016, Tr. 1-4. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Born in 1968, plaintiff has A.A. and B.S.N. degrees in nursing, and has worked as a registered nurse. Tr. 157, 560, 612-13. At the time of the hearing, plaintiff worked two part-time jobs: magazine editor (for forty hours every three months) and Christian counselor (initially

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer. (Docket Nos. 11, 12).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 8).

training fifteen hours per week, three hours per day, then later for fewer hours seeing clients). Tr. 40-42, 612, 686. Plaintiff suffers from chronic fatigue and pain. Tr. 200-05, 259, 306. She has had two lumbar laminectomies, a fusion in her cervical spine, and surgery for a torn rotator cuff in her left shoulder. Tr. 242, 319, 346, 424, 550. The hardware from the cervical fusion failed, and her C6-C7 vertebrae are no longer fused. Tr. 242, 500, 611. Plaintiff suffers from Lyme disease and protomyxzoa rheumatica. Tr. 299, 307, 472. Plaintiff states that she lies down a few hours every day, and has mobility and flexibility limitations. Tr. 48, 259. Plaintiff reports joint pain, cognitive dysfunction, severe fatigue, and insomnia from Lyme disease. Tr. 245-47, 252-57, 299, 509-13. Plaintiff is divorced and lives with her two high-school-age daughters, who have special needs and whom plaintiff homeschools. Tr. 44, 300, 423.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the ALJ must evaluate medical and other evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). The

Commissioner proceeds to the fourth step to determine whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 16. Plaintiff's counseling and editing work did not constitute substantial gainful activity. Tr. 16-17. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status post cervical fusion; degenerative joint disease of the lumbar spine, status post two lumbar laminectomies; a SLAP (superior labrum, anterior to posterior) tear of the left shoulder, status post surgical arthroplasty and repair; asthma; protomyxzoa rheumatica; migraines; Lyme disease; and chronic pain syndrome. Tr. 17. The ALJ found that mitral regurgitation was not a severe impairment. *Id.* The ALJ found no severe medically determinable impairments of the liver, nor medically determinable impairments of anxiety, depression, or posttraumatic stress disorder. Tr. 17-19. The ALJ found no medical evidence of record of multiple sclerosis or chronic fatigue syndrome. Tr. 18. At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment. Tr. 19. The ALJ found that plaintiff had the RFC to perform light work, with certain physical and cognitive limitations. Tr. 20. At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 27. At

step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the economy, including office helper, mail clerk, and storage facility rental clerk, and determined that she was not disabled under the Act and not entitled to benefits. Tr. 27-28.

## ANALYSIS

Plaintiff argues that the ALJ in three regards: (1) in rejecting her symptom testimony; (2) in rejecting the opinion of her treating physician, Douglas Eubanks, D.O.; and (3) in not assessing her neck mobility limitations. The Court finds that the ALJ did not so err.

### I. **Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting her subjective symptom complaints. The ALJ found that some of the impairments plaintiff complained of were not supported by evidence of record, that her treatments had generally been effective in relieving symptoms, and that she attempted to minimize her daily activities and work activities. Tr. 21, 24.

When deciding whether to accept a claimant's subjective symptom testimony, the ALJ performs a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage, the ALJ assesses the claimant's testimony regarding the symptoms' severity. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* In order to discredit a plaintiff's testimony regarding the degree of

impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's symptom testimony, including

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

Plaintiff argues that her daily activities do not exceed her claimed limitations. In her Function Report, plaintiff claimed that it was "difficult to endure physical or mental work for more than an hour or two at a time," Tr. 192; that "bathing/dressing wears [her] out easily and takes a chunk of time," Tr. 194; that she can play piano only for 30 minutes once or twice a week due to pain and concentration problems, Tr. 196; that "[i]t just takes a lot of effort and tires [her] to pay the monthly bills," *id.*; that she can pay attention only "15 min to 45 min," Tr. 197; that on a "high fatigue or pain day" speech becomes very difficult and fatiguing, and she "tend[s] to stutter and slur," Tr. 200; that if she "push[es] [her]self to keep going throughout a good portion of the day" (such as attending church and a potluck afterwards), she "pay[s] for it by having to recuperate for the next three days, and not being able to get anything accomplished," Tr. 201.

The ALJ, however, cited substantial evidence that plaintiff engages in extensive daily activities requiring physical and mental acuity. Plaintiff is a single parent raising two daughters, whom she homeschools because of their cognitive impairments, "at least a couple hours spread

impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's symptom testimony, including

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

Plaintiff argues that her daily activities do not exceed her claimed limitations. In her Function Report, plaintiff claimed that it was "difficult to endure physical or mental work for more than an hour or two at a time," Tr. 192; that "bathing/dressing wears [her] out easily and takes a chunk of time," Tr. 194; that she can play piano only for 30 minutes once or twice a week due to pain and concentration problems, Tr. 196; that "[i]t just takes a lot of effort and tires [her] to pay the monthly bills," *id.*; that she can pay attention only "15 min to 45 min," Tr. 197; that on a "high fatigue or pain day" speech becomes very difficult and fatiguing, and she "tend[s] to stutter and slur," Tr. 200; that if she "push[es] [her]self to keep going throughout a good portion of the day" (such as attending church and a potluck afterwards), she "pay[s] for it by having to recuperate for the next three days, and not being able to get anything accomplished," Tr. 201.

The ALJ, however, cited substantial evidence that plaintiff engages in extensive daily activities requiring physical and mental acuity. Plaintiff is a single parent raising two daughters, whom she homeschools because of their cognitive impairments, "at least a couple hours spread

through the day." Tr. 44. The homeschooling includes monitoring online coursework, teaching math in-person, and helping one daughter with reading. Tr. 21, 44-45. Plaintiff maintains her household (with assistance), prepares meals, exercises, does laundry, and manages money. Tr. 193-96, 200-01, 307. She spends forty hours per quarter editing a magazine (averaging three hours per week), and for a time spent fifteen hours per week training to be a counselor. Tr. 40-42, 612, 686. The ALJ could reasonably find that these activities amount to a significant number of hours per day doing work or work-like activities, requiring mental and physical exertion in excess of the substantial limitations plaintiff claimed. Plaintiff argues that these activities are "tailored to her needs so that she can take breaks" and "are perfectly in keeping with her claimed limitations," Pl. Br., at 7-8 (Docket No. 21), but she cites no evidence for this, and in any event this argument only amounts to an alternative interpretation of the evidence. The ALJ may reasonably discredit plaintiff's symptom testimony based on these activities. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff also argues that objective evidence supports her testimony. Her argument is that the impairments the ALJ found severe (Lyme disease, chronic pain, degenerative disc disease) "*can*" cause limitations as severe as those she asserts. Pl. Opening Br., at 8 (Docket No. 21 (emphasis added). However, her argument about what limitations certain conditions "can" cause is not medical evidence of what they do in fact cause. The ALJ discounted plaintiff's testimony due to insufficient medical evidence. Tr. 22-24. The ALJ's reasons for discounting her subjective symptom testimony were not in error. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## II. Treating Physician Opinions

Plaintiff argues that the ALJ erroneously rejected the opinions of treating physician Douglas Eubanks, D.O. Dr. Eubanks completed a Physical Capacity Statement, stating that plaintiff has various physical limitations. Tr. 626-29. The ALJ found that Dr. Eubanks' opinions were not supported by treatment notes, were contradicted by substantial evidence, and had little supporting evidence; the ALJ thus gave his opinions "only limited weight." Tr. 26.

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

Plaintiff concedes that Dr. Eubanks' opinions are contradicted by other doctors' opinions (presumably, consulting examining physician Kim Webster, M.D., and consulting nonexamining physicians Leslie Arnold, M.D., and Roy Brown, M.D., Tr. 66-71, 78-82, 610-24). Pl. Opening Br., at 9 (Docket No. 21). The ALJ was required only to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Eubanks' opinions.

Plaintiff first challenges the ALJ's finding that Dr. Eubanks' opinion "is contradicted by substantial evidence." Tr. 26. Plaintiff argues, "This standard is misplaced. Dr. Eubanks's opinion is supported by the diagnoses of Lyme disease, degenerative disc and joint disease, chronic pain syndrome, and his own findings on exam . . . ." Pl. Opening Br., at 9 (Docket No. 21). However, the standard for rejecting a contradicted treating physician's opinion *is* specific and legitimate reasons supported by substantial evidence. *Orn*, 495 F.3d at 632. Further, the question is not whether substantial evidence opposes a physician's opinion, but whether the ALJ's weighting of the physician's opinion is supported by substantial evidence. Whether plaintiff received certain diagnoses does not establish whether there is sufficient evidence of the severity of her conditions. *Schaffner v. Astrue*, No. 3:11-cv-00716 RE, 2012 WL 3241700, at *4 (D. Or. Aug. 7, 2012) ("[A] diagnosis is not the same thing as a functional limitation.") Although Dr. Eubanks may have made certain findings on exam, the ALJ is entitled to discount these findings if substantial evidence supports the ALJ's determination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005). Plaintiff has not argued that it does not.

Plaintiff argues that Dr. Eubanks' assessment does not conflict with her activities. Dr. Eubanks opined that plaintiff should avoid activities involving lifting, extending, impact, or twisting, and placed limits on other activities, including walking, standing, and sitting (e.g., can sit for four hours per day, and can maintain a position for 30 minutes). Tr. 626-28. He opined that plaintiff needed to take additional breaks, lying down, during the work day, for fifteen to thirty minutes. Tr. 627. He stated that, for "1/2 of day or less," plaintiff's symptoms would interfere with attention and concentration in performing "even [a] simple 2 step work task[]." Tr. 628-29. Plaintiff, referring to her argument about her own testimony and whether her daily activities conflict with the claimed limitations, argues that her "activities are exactly in keeping

with Dr. Eubanks's assessment. [Plaintiff] sits to put on socks, cannot sit for long, cannot cook full meals, and takes breaks during chores." Pl. Opening Br., at 9 (Docket No. 21). While the ALJ did not completely explain how plaintiff's activities conflict with Dr. Eubanks' opined limitations, the ALJ wrote, "the evidence of record shows that the claimant has greater abilities and carries on more extensive activities than acknowledged by Dr. Eubanks." Tr. 26. Unlike the limitations that plaintiff herself claimed, which would necessitate her working only in very short intervals on basic tasks with extended breaks, Dr. Eubanks' assessed limitations, while more modest, do not contradict plaintiff's claimed activities. Those activities are not a valid reason to discount his opinions.

Even though the ALJ erred in discounting Dr. Eubanks' opinions due to a purported conflict with plaintiff's activities, the ALJ provided other sufficient grounds on which to discount his opinions, and thus any error was harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The ALJ found that Dr. Eubanks' opinions were contradicted by the medical evidence and not supported by his treatment notes. Tr. 26. Substantial evidence supports this finding, because a number of other providers assessed normal findings on exam. *Id.*[4] Also, Dr. Eubanks' own treatment notes from four appointments in early 2015 show normal findings as to cognitive and musculoskeletal functioning. Tr. 632-43. The ALJ found that Dr. Eubanks provided little supporting evidence for his opinions about plaintiff's inability to work for eight hours, and need for extra breaks and occasional absences, Tr. 26, and plaintiff has not challenged

---

[4] *E.g.*, Paul Switlyk, M.D. (on shoulder exam, "There is nothing [plaintiff] cannot do."), Tr. 535; Laura Havies, M.D. (on musculoskeletal exam, "She has absolutely no signs of synovitis and completely normal range of motion throughout the entire joint exam."), Tr. 394; Debra Todd, N.P. (normal neurological and cognitive functioning, gait and stance normal), Tr. 310-12; Kim Webster, M.D. ("normal neuromuscular examination" as to neck, back, and shoulder), Tr. 617.

these findings. These are specific and legitimate reasons, supported by substantial evidence, to discount Dr. Eubanks' opinions. The ALJ did not err in discounting them.

### III. Mobility Limitations and RFC

Plaintiff argues that the ALJ did not assess any limitation on the range of motion in her neck, despite a step two assessment of cervical degenerative disc disease, and despite the failure of the hardware from her C6-C7 fusion surgery. Plaintiff argues that her neck mobility is significantly limited, and that the jobs the ALJ identified at step five all require neck motion (writing, filing, answering phones, etc.).

The ALJ, however, assessed an RFC supported by substantial evidence. The ALJ partially relied on the opinion of Dr. Webster, who examined plaintiff's cervical spine range of motion, diagnosed "[n]eck pain, status post surgery with a normal neuromuscular examination," but did not assign any specific restrictions due to cervical spine impairment. Tr. 22-24, 615-17, 619-24. The ALJ considered Dr. Webster's Medical Source Statement and found, due to inconsistencies with plaintiff's longitudinal record, plaintiff's ability to lift and carry is more limited than assessed, but also credited his assessed limitations on her ability to sit, stand, walk, and reach. Tr. 26, 610-18. The ALJ also considered the opinions of consultants Leslie Arnold, M.D., and Roy Brown, M.D., Tr. 27, 66-71, 78-82, who concluded that plaintiff had severe physical impairments but retained the ability to do light work. Plaintiff argues that Dr. Eubanks' examination revealed reduced active range of motion, but she does not identify any limitations placed by Dr. Eubanks on her ability to work with regard to neck mobility. Tr. 626-29.

Plaintiff's argument about her inability to perform the jobs identified at step five due to neck mobility impairment relies on her assertions about her own limitations, and does not cite medical evidence; this is argument, not evidence, and is not competent to reverse the ALJ's

finding. *Vaile v. Colvin*, No. 6:12-cv-00572-RE, 2013 WL 4501050, at *2 (D. Or. Aug. 21, 2013) ("The ALJ is not obligated to consider a claimant's assertion . . . unless it is supported by objective evidence.") Plaintiff claims that the ALJ failed to discuss Dr. Eubanks' examination findings of reduced neck motion; however, Dr. Eubanks did not identify any limitations as a result of his findings. Tr. 626-29. The ALJ did discuss plaintiff's neck in the context of exams by Dr. Webster, Laura Davies, M.D., and Ryan Bellacov, D.C., Tr. 23, 24. Ultimately, plaintiff's argument amounts to a different interpretation of the medical evidence and preference for one physician's opinion over others', but these are not legitimate reasons to reverse the ALJ's findings and RFC determination. *Bayliss*, 427 F.3d at 1217.

The ALJ did not err in not including neck mobility limitations in plaintiff's RFC.[5]

## CONCLUSION

For these reasons, the Court AFFIRMS the Commissioner's decision. The ALJ did not err in discounting plaintiff's testimony or Dr. Eubanks' opinions, and did not improperly determine plaintiff's RFC. The Commissioner's findings are based on substantial evidence in the record and the correct legal standards.

IT IS SO ORDERED.

DATED this 8th day of September, 2017.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge

---

[5] The record does reveal that the ALJ considered plaintiff's neck mobility in his questions to the VE regarding cervical flexion and range of motion. Tr. 58-62.

Page 13 – OPINION AND ORDER